Daniele Capoldi et al
vs.                    }No.54921
United Electric Rwys. Co.
June 29, 1926

CAPOTOSTO, J. The plaintiffs, suing under the statute, recovered a verdict of $2000 for the death of their five year old child, Americo Capoldi, as a result of injuries inflicted by an electric car of the defendant company at or near the corner of Hawkins and Charles streets in the city of Providence in the afternoon of September 27, 1920. The defendant asks for a new trial on the usual grounds.

At the place of the accident, Charles street, which runs north and south, is intersected almost at right angles by Hawkins street, with this peculiarity, however, that the westerly centre of the intersection of the highways is practically in line with the southerly side of the easterly intersection of the two streets. Charles street is 34 feet wide from curb to curb with two sets of rails in the centre of the street and slightly down grade for some distance, approaching the place in question from the north. Hawkins street is approximately 24 feet wide from curb to curb. At the northwest corner of the two streets is a drug store; at the southwest corner is Hopkins Park, so called. Buildings are located at the other two corners. Marietta street intersects Charles street on the west about 120 feet north of Hawkins street. A white stop pole of the defendant company was located about one hundred feet north of Hawkins street and some twenty feet south of Marietta street. The weather was clear and the traffic light. The car which figured in the accident was a double truck, two-man, inbound Woonsocket car.

The plaintiffs' evidence of liability rests upon the testimony of two men, Angelo Creco and Peter Picerno. In general Creco's testimony is to the effect that while he was standing at the northeast corner of Charles and Hawkins streets he saw the boy come from the park corner, cross Charles street, go up some distance along the easterly portion of Hawkins street to a dump which is located there, and re-

turn to the southeast corner of Charles and Hawkins streets; that he then stepped into the travelled portion of Charles street, headed towards the drug store at the northwest corner, and, while walking slowly, was almost struck by an auto truck which was coming north on Charles street and about to turn into the easterly portion of Hawkins street; that the truck driver hallooed; that the boy, who was then in the vicinity of the outbound track, turned in the direction of the truck driver and continued to walk slower than ever in a backward or sidewise position toward the inbound track; that the electric car at that time had just passed Marietta street; that it was coming at the rate of about twenty miles an hour and that at no time did it reduce its speed from the time he first saw it until the boy was struck. He further testified that the car, after striking the boy, stopped in about twelve feet; that he picked up the boy on the left front side of the car in the vicinity of the front wheel and took him to a drug store. This witness stated that he did not give his name to anyone; that he immediately left the scene and that he had talked to no one about the accident, not even the boy's father, although he was acquainted with both the boy and his father, until the father called on him a considerable time later.

The testimony of Peter Picerno, who was standing at the northwest or drug store corner and almost directly across the street from the other witness, is identical in all essential characteristics to the evidence of Creco. If it were possible for two men to look through the same pair of eyes from the same position and with the same power of observation and attention, their testimony could hardly be any more definite and similar on material points.

The defendant produced two witnesses as to the actual occurrence,

the motorman of the car and one Gerson Ride. The motorman, a man of twenty years' experience, testified that he was following within six or seven car lengths a local Charles street car and that he had come to a full stop at the white pole just south of Marietta street; that when he received the bell to start, he put his car in motion and was approaching the northwest or drug store corner of Charles and Hawkins streets at a speed of six to eight miles an hour, when he noticed the boy a very short distance ahead of the car, perhaps ten or twelve feet, directly in front of a truck loaded with flour which was being driven with one wheel inside the outbound track and which was about to turn into the easterly portion of Hawkins street; that when the driver of the truck hallooed, the boy faced the truck and with his back toward him darted in the direction of the car; that when he first saw the boy's position, he jumped on his bell vigorously and immediately applied his reverse, bringing his car to a stop within ten or twelve feet from where the boy was struck by the overhang of the car; that he jumped from his position on the front platform, ran to where the boy was between the two sets of rails, found him with his head toward the outbound track and his feet between the two wheels of the front truck of the car, picked him up and unassisted carried him first to Parker's drug store and then to fire station from where the boy was removed in an ambulance.

Gerson Ride testified in substance that he had crossed Charles street, in a Ford touring car, and that as he entered the easterly portion of Hawkins street, he heard some one halloo; that he turned around and saw a little boy a short distance, perhaps some five feet, behind his automobile, who, in attempting to get out of the way of Giusti's flour truck, was struck by the electric car. When he

first saw the boy the electric car, according to this witness, was moving slowly and had already reached the northwest corner of Hawkins and Charles streets.

The motorman was corroborated by other witnesses as to the moderate speed of the car, as to his stopping at the white post below Marietta street, as to the sudden and efficient stopping of the car at the time of the accident, and as to his humane conduct in rushing to pick the lad up unassisted and seeking relief for· him.

The jury in answer to a special finding found, as a fact, that the electric car of the defendant stopped at the white pole on the westerly side of Charles street north of Hawkins street just before the accident.

W. Ernest Shurtleff, an employee in the defendant's claim department, testified that he had secured the names of the driver of the truck and his helper from the police; that he had located both of them and that when he tried to question them as to the accident, they would not talk.

The evidence conclusively establishes three points which are contrary to the testimony of Creco and Picerno, namely, that the car was being operated at a moderate, if not a slow rate of speed rather than at 20 miles an hour; that the car did not come right along by Marietta street to Hawkins street without stopping or slowing down, and that the motorman, rather than Creco or Picerno, or both, picked up the boy from where he lay and sought to render whatever· assistance was possible. If one adds to these fundamental contradic-

tions the great similarity in the testimony of these two witnesses, each observing from an entirely different viewpoint almost exactly what the other saw at the same time and in the same way, one seriously hesitates to accept their statements. Their demeanor while on the witness stand also was in marked contrast to that of the witnesses for the defendant, especially the motorman. Making all allowance for strangeness of surroundings, the testimony of Creco and Picerno did not carry conviction. The driver of the truck and his helper were not produced as witnesses by the plaintiffs, nor was their absence explained. The defendant located these witnesses through the same means which were accesible to the plaintiffs, but they refused to make any statement whatever.

The evidence as a whole reveals the happening of a sad but unavoidable occurrence. The unfortunate boy, probably confused by an emergency created by himself and the truck, blindly ran into an ordinarily obvious danger, even to a child of his years, at a time when no reasonable human effort on the part of the motorman could have prevented a collision between the boy and the overhang of the car which the motorman was operating. The court is not unmindful of the distressing circumstances disclosed by the evidence and would feel far happier if in discharging its duty it could see its way clear to sustain the jury's verdict. The same humane consideration probably unduly influenced the jury in reaching its verdict. The result obtained not only is not supported by the weight of the evidence but on the material points the plaintiffs' case is seriously disproven by testimony and experience.

Motion for new trial granted.

For Plaintiff: A. V. Pettine and E. F. Godfrey.

For Defendant: Clifford Whipple and E. A. Sweeney.